IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

CHARLES E. GROOM, )
 )
        Plaintiff, )
 )
v. ) Case No. CIV-17-018-KEW
 )
COMMISSIONER OF THE SOCIAL )
SECURITY ADMINISTRATION, )
 )
        Defendant. )

**OPINION AND ORDER**

Plaintiff Charles E. Groom (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and the case REMANDED to Defendant for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951); *see also*, <u>Casias</u>, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 62 years old at the time of the ALJ's latest decision. Claimant obtained his GED, took a few college classes, and obtained a real estate license. Claimant has worked in the past as a health care provider. Claimant alleges an inability to work beginning September 20, 2011 due to limitations resulting from back pain, neuropathy in the legs and feet, Meniere's disease, COPD, and fluid on the brain.

**Procedural History**

On June 11, 2013, Claimant protectively filed for protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. On June 5, 2013, Claimant filed for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On August 19, 2014, the Administrative Law Judge ("ALJ") conducted an administrative hearing in Tulsa, Oklahoma. On November 21, 2014, the ALJ entered an unfavorable decision. The Appeals Council reversed the decision and remanded the case to the ALJ on February 27, 2015.

On remand from the Appeals Council, ALJ John W. Belcher conducted a supplemental hearing on June 9, 2015 in Tulsa, Oklahoma. On August 28, 2015, the ALJ entered a second unfavorable decision. The Appeals Council denied review on December 7, 2016. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made her decision at step four of the sequential evaluation. He determined that while Claimant suffered from severe

impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform his past relevant work.

### Errors Alleged for Review

Claimant asserts the ALJ committed error in (1) ignoring probative medical evidence related to Claimant's shoulder impairment; (2) reaching an RFC which did not adequately address Claimant's bilateral shoulder impairment; and (3) failing to perform a proper step four analysis supported by substantial evidence.

### Consideration of All Probative Medical Evidence
### and the RFC Determination

In his decision, the ALJ found Claimant suffered from the severe impairments of degenerative disc disease of the lumbar and cervical spine, degenerative joint disease and arthropathies of the legs, COPD, hypertension, and obesity. (Tr. 13). The ALJ determined Claimant retained the RFC to perform light work except he could only stand or walk for four hours in an eight hour workday; sit for six to eight hours in an eight hour workday; could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; could never climb ladders, ropes, or scaffolds; could frequently handle and finger and feel; could tolerate occasional exposure to extreme cold and heat, defined as below 32 degrees and above 90 degrees Fahrenheit; occasional exposure to wetness, fumes, odors, dusts, and gases and poor ventilation; and could have no

5

exposure to unprotected heights or hazardous or fast machinery. The ALJ found Claimant should have a job that does not require stereo vision, fine visual acuity or depth perception, and does not require loud background noises. (Tr. 16).

After consultation with a vocational expert, the ALJ determined Claimant could perform her past relevant work as a health care provider. (Tr. 22). As a result, the ALJ concluded that Claimant was not under a disability from September 20, 2011 through the date of the decision. Id.

Claimant first contends the ALJ erred by failing to consider the medical evidence pertaining to his bilateral shoulder problems. In reference to this condition, the ALJ included in his findings that Dr. Scott Lilly found Claimant to have "mild decreased shoulder range of motion." (Tr. 18). He also recognized Claimant's Adult Function Report which indicated Claimant an impairment of his ability to reach, among other functional restrictions. (Tr. 17). The ALJ also noted the report of Dr. Ronald Schatzman, a consultative examiner. Dr. Schatzman found Claimant had "decreased bilateral shoulder abduction with obvious pain." (Tr. 19).

A complete review of the record on this issue reveals Dr. Lilly completed a medical source statement on July 7, 2014. He indicated Claimant could occasionally lift up to ten pounds but not carry such weight; could sit for one hour, stand for 30 minutes, and walk for

6

fifteen minutes at a time; could sit for four hours, stand for one hour, and walk for 30 minutes in an eight hour workday; and uses a cane to ambulate. These findings were based upon findings that Claimant suffered from chronic vertigo, degenerative disc disease, osteoarthritis, sciatica, COPD, coronary artery disease with unstable angina, and rheumatoid arthritis. (Tr. 523-24). With regard to reaching, Dr. Lilly found Claimant could never reach overhead bilaterally and could occasionally otherwise reach, handle, finger, and feel. He attributed these restrictions to residual neuropathic pain, bilateral upper extremity neuropathy and osteoarthritis with decreased sensation in the hands and fingers and decreased fine motor movements. (Tr. 525). He could never push/pull or operate foot controls. Dr. Lilly also found Claimant could not engage in postural activities and could not be subjected to environmental adverse working conditions. (Tr. 525-27).

In May 16, 2015, Dr. Lilly completed a second statement which limited Claimant to occasional overhead reaching and occasional "all other" reaching. He attributed the restrictions to neuropathy secondary to degenerative disc disease and osteoarthritis. (Tr. 590).

The limitations in shoulder use set out in the medical source statement finds support in the medical record. In Dr. Lilly's treatment records from May 25, July 29, August 26, and October 26,

7

2011, he consistently found "[m]ild decreased range of motion in the shoulders bilaterally with decreased abduction and external rotation." (Tr. 505, 508, 512, 514). These findings were also present in the treatment records from the period prior to the onset date. (Tr. 500, 503).

While the ALJ recognized the presence of restricted overhead reaching in Dr. Lilly's and Dr. Schatzman's records, he failed to address the basis for failing to include limitations for the condition in the RFC. The ALJ is required to consider all medical opinions, whether they come from a treating physician or non-treating source. Doyle v. Barnhart, 331 F.3d 758, 764 (10th Cir. 2003); 20 C.F.R. § 416.927(c). He must provide specific, legitimate reasons for rejecting any such opinions. The ALJ must also give consideration to several factors in weighing any medical opinion. Id.; 20 C.F.R. § 416.927(d)(1)-(6). Here, the ALJ stated he gave Dr. Lilly's opinion "little weight" because it was inconsistent with his own treatment records which reflected generally normal physical examinations and showed improvement and because Dr. Lilly's two opinions were internally inconsistent. (Tr. 21). The ALJ did not address limitations in reaching when Dr. Lilly's opinion evidence on the issue was consistently supported by his treatment records. He did not give specific reasons for failing

rejecting the opinion on the bilateral shoulder impairment. On remand, the ALJ shall address this condition and any limitations it might impose on Claimant in the RFC.

**Step Four Determination**

Claimant contends the ALJ's step four analysis is legally flawed. In analyzing Claimant's ability to engage in his past work, the ALJ must assess three phases. In the first phase, the ALJ must first determine the claimant's RFC. <u>Winfrey v. Chater</u>, 92 F.3d 1017, 1023 (10th Cir. 1996). This Court has determined that the ALJ's RFC assessment did not adequately address Claimant's shoulder impairment.

In the second phase, the ALJ must determine the demands of the claimant's past relevant work. <u>Id</u>. In making this determination, the ALJ may rely upon the testimony of the vocational expert. <u>Doyal v. Barnhart</u>, 331 F.3d 758, 761 (10th Cir. 2003). The third and final phase requires an analysis as to whether the claimant has the ability to meet the job demands found in phase two despite the limitations found in phase one. <u>Winfrey</u>, 92 F.3d at 1023.

The ALJ's findings in the last two phases were as follows:

> The claimant reported that when he cared for his brother he mostly watched his pulse and oxygen levels, played games with him, and fed and watered his brother's dogs. (Ex. B2E/4). In his hearing, he stated that he would play cards and checkers with his brother, monitored his brother's oxygen and made sure that he used his saline to

9

> hydrate his nose, and would fill out forms if something happened.
>
> The vocational expert testified that the claimant has past work as a health care provider (DOT #354.377-014, medium as generally performed, light as actually performed, semiskilled at Specific Vocational Preparation level (SVP) 3). . . . The claimant completed a Work History Report asserting that he worked as a health care provider from 2001 through September 2011, which occurred during the last fifteen years. . . .
>
> The undersigned notes that based solely on the claimant's testimony, the claimant could not perform his past relevant work. However, as shown above, the medical evidence of record does not support the claimant's alleged degree of disability and supports the above residual functional capacity.
>
> Upon questioning by the undersigned, the vocational expert testified that if an individual had the claimant's age, education, work experience, and residual functional capacity, such an individual could perform the claimant's past relevant work as a health care provider. Therefore, the undersigned finds that the claimant could perform his past relevant work as a health care provider, as actually performed.
>
> Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles (DOT).
>
> (Tr. 22).

Claimant contends these findings include a requirement for adequate vision when the ALJ included a restriction in the RFC that Claimant "should have a job that does not require stereo vision, fine visual acuity or depth perception." (Tr. 16). The vocational

expert found that the job most similar to the health care provider employment identified by Claimant as his past relevant work was that of Home Attendant as defined in the *Dictionary of Occupational Titles* ("*DOT*")(*DOT* #354.377-014).  With regard to the vision requirements of this job, the *DOT* states that it requires near acuity, occasionally, far acuity, occasionally, depth perception, occasionally, and field of vision, occasionally.  Id.  As a result, an apparent conflict exists between the testimony of the vocational expert and the *DOT*.  An ALJ is responsible for investigating any discrepancies between the vocational expert's testimony and the *DOT*.  Haddock v. Apfel, 196 F.3d 1084, 1091 (10th Cir. 1999).  In this case, the ALJ accepted the vocational expert's blanket representation that there was no conflict when one existed.  On remand, the ALJ shall resolve this conflict.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied.  Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the case is REMANDED to Defendant for further proceedings consistent with this Opinion and Order**.

IT IS SO ORDERED this 27th day of September, 2018.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE